IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBERT STORY, JR., <br><br> Plaintiff, <br><br> v. <br><br> BEST WAY TRANSPORTATION INC., *et al.*, <br><br> Defendants. | Case No. 3:19-cv-02704-M-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* employment discrimination action is a Rule 12(b)(6) Motion to Dismiss (ECF No. 23) filed by Defendants Best Way Transportation, Inc. (Best Way), Matt Dillon, Brett Witt, and Sonja Witt. For the reasons stated, the Motion should be GRANTED in part and DENIED in part.

**Background**

Plaintiff Robert Story, who is African American, worked as a "CDL driver" for Best Way, a trucking company headquartered in Palmer, Texas. Compl. 2 (ECF No. 1); *see also* Resp. 4 (ECF No. 32). In his Complaint, Story alleges "everything was fine" when he started working at Best Way in April 2016, and he "had no issues or complaints from management . . . about [his] work performance or attitude, until mid[-]August, [2016]" when Randy, the night shift supervisor, began harassing him. Compl. 3-4. Ultimately, Best Way terminated Story's employment two months later, on October 21, 2016. *Id.* 13-14.

1

According to Story, the trouble with Randy began when Randy asked Story what he thought about President Obama. *Id.* 5. After Story responded that he was "not into politics," Randy allegedly stated that he disliked Latinos. *Id.* Story then asked Randy what he thought of the Black Lives Matter Movement, to which Randy purportedly stated, among other things, that he thought the movement was "a joke." *Id.* Story states that when he recounted this conversation his co-worker, Tommy, Tommy told Story that Randy is a racist and to stay away from him. *Id.* 6. When Story told Tommy that he planned to file a complaint about Randy with Yogi, the lead supervisor and mechanic, Tommy told Story that Yogi and Randy were best friends. *Id.*

Next, on August 22, 2016, although he would have been on time anyway, Story allegedly told Yogi that he needed to get his glasses repaired before reporting to work. *Id.* Story alleges that Yogi assumed he was trying to "get out of working" and told him he was fired, but that fifteen minutes later Yogi left Story a message recanting the termination and permitting Story to get his glasses fixed before work. *Id.* 6-7. Instead, Story reported to work with his glasses still in disrepair, planning to take them to get them fixed on his lunch break. *Id.* 7. But Yogi allegedly told him to go get them fixed and then take the day off. *Id.* Two days later, Story states that he was issued a written warning for coming to work without his glasses. *Id.* Jeff, the safety manager who issued the warning, purportedly told Story that "it was not his decision" to issue the warning and that he was just "follow[ing] orders." *Id.* Story alleges Yogi ordered Jeff to issue the warning. *Id.*

2

Then, on or about October 7, 2016, Story damaged the rim of a tire on his tractor. *Id.* 8. At the end of the day, he reported the damage to Randy and went home. *Id.* The next workday, Tommy allegedly told Story that after he had gone home the prior evening, Randy called Story a racial slur and said, "I'm going to get rid of his black ass, like the other[s] . . . before him." *Id.* Story reported Randy's racial comments to Yogi on October 13, 2016. *Id.* 9. Story also reported to Yogi that Randy had previously lied to Yogi about Story taking extended lunch breaks and leaving his shift early. *Id.* The following day, Defendants Brett and Sonja Witt, the president and vice president of Best Way asked Story to "watch a racially sensitive video and sign off[] that [he was] cooperative." *Id.* 10.

Later, on October 17, 2016, Yogi performed repairs on Story's truck. *Id.* The next day, Jeff allegedly told Story to ensure he always wore a seatbelt, despite the short distance he shuttles the trailers. *Id.* That same day, Story experienced problems with his steering wheel, but he was able to complete his work. *Id.* 10-11. When parking his truck at the end of his workday, he noticed a bar underneath his truck "with a wet substance around it." *Id.* 11. Tommy approached and told Story that the bar was his steering bar; that he was lucky it did not dislodge while on the roadway, as it surely would have caused him to have an accident; and that he happened to know from his experience working on his personal vehicle that steering bars "just can't fall off." *Id.* 12. Story alleges that, although employees are responsible for 30%, or up to $500.00, of costs to repair damaged equipment, when he reported the steering bar incident to Yogi, Yogi did not write the incident

up. *Id.* Story alleges that he became suspicious of Yogi and took a day off due to stress caused by this incident. *Id.* 13.

On October 20, 2016, Story returned to work. *Id.* That day, Tommy told Story that Randy had worn a confederate flag bandana to work "to upset" Story but that Jeff had told him to take it off. *Id.* Story alleges that he spoke to Jeff about this incident. *Id.* During that conversation, Jeff purportedly told Story that if he was asked about the situation he would "be a man and tell the truth." *Id.* Additionally, Story alleges that Tommy was asked if "he was the one who informed [Story] about the racial comments that Randy made," to which Tommy replied that "Randy has been getting away with things . . . for a long time" and if Story needed Tommy to testify in court, he would do so. *Id.* "About 30 minutes" after that exchange, Story alleges he was terminated "for insubordination and a few other things." *Id.* 14.

Based on this alleged conduct, Story filed his *pro se* Complaint on July 1, 2019 in the Central District of California asserting claims for "racial discrimination," "wrongful termination," "negligence," and "intentional infliction of emotional distress." *Id.* 17. The parties subsequently agreed to transfer the case to this Court. Defendants timely moved to dismiss, and the Motion is fully briefed and ripe for determination.

**Legal Standard**

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205

4

(5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include

5

documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

## Analysis

Story titles his initial pleading, a "Civil Rights Complaint pursuant to 42 U.S.C. § 1983." Compl. 1. The first page of his pleading further states: "Complaint for Damages[:] 1. Racial Discrimination (42 U.S. Code Chapter 21—Civil Rights), 2. Wrongful Termination (29 U.S. Code [§] 158 Unfair Labor Practices), 3. Negligence (19 U.S. Code §§ 1592—Penalties for Fraud, Gross Negligence, and Negligence U.S. Code. US Law, and 4. Intentional Infliction of Emotional Distress (18 U.S. Code [§] 2340)." *Id.* Defendants argue Story's Complaint should be dismissed because he failed to state a claim for discrimination under 42 U.S.C. § 1983, for negligence pursuant to 19 U.S.C. § 1592, and for intentional infliction of emotional distress pursuant to 18 U.S.C. § 2340. Defendants further argue Story failed to allege enough facts to state a claim for race discrimination under Title VII, 42 U.S.C. § 2000e-2(a)(1). The Court addresses these arguments in turn.

### I. Story fails to state a claim under 42 U.S.C. § 1983.

Defendants construe Story's Complaint as bringing a civil rights claim under 42 U.S.C. § 1983 and argue that because no defendant is, or is affiliated with, a state actor, such claim should be dismissed with prejudice. Mot. 3-4. In his response, Story concedes his "Discrimination and Retaliation causes of action

6

should have been pursuant to Title VII of the Civil Rights Act of 1964[.]" Resp. 6 (ECF No. 32). Story has thus abandoned any claim under § 1983. To the extent he has not abandoned his § 1983 claim, however, it should be dismissed. "[F]or a plaintiff to state a viable claim under § 1983 against any private defendant, . . . the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001) (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 924, 928-32 (1982)). All named defendants are private actors, and because Story did not allege that they are state actors or are affiliated with the state, their conduct cannot plausibly be construed as state action under color of law. The Court should dismiss Story's § 1983 claim.

II. Story fails to state a claim for wrongful
termination claim under 29 U.S.C. § 158.

Next, Defendants posit that Story's wrongful termination claim fails because he conceded in his Complaint that he was terminated for cause. Mot. 5. The Court finds that Story's wrongful termination claim should be dismissed, however, because the statute he invokes, 29 U.S.C. § 158, is inapplicable to the facts as pleaded. Indeed, 29 U.S.C. § 158(a)(4) is a provision of the Fair Labor Standards Act (FLSA) that prohibits an employer from terminating an employee because he has made a complaint or testified *under the FLSA*. 29 U.S.C. § 158(a)(4) (providing that it is unlawful to "discharge or otherwise discriminate against an employee because he has filed charges or given testimony *under this subchapter*"). The FLSA

7

establishes minimum wage, overtime pay, recordkeeping, and other employment standards. *See* 29 U.S.C. § 216(b). The FLSA is not an employment discrimination statute. None of the facts alleged in the Complaint implicate the FLSA.[1] The Court should dismiss Story's claim under 29 U.S.C. § 158.

### III. Story's claims for negligence under 19 U.S.C. § 1592 and intentional infliction of emotional distress under 18 U.S.C. § 2340 fail as a matter of law.

Defendants also challenge Story's tort claims on the grounds that he invokes "inapplicable United States federal statutes" in bringing them. Mot. 4. The Court agrees. 19 U.S.C. § 1592, the statute Story cites in support of his negligence claim, defines penalties for fraud, gross negligence, and negligence regarding the collection of "any lawful duty, tax, or fee." 19 U.S.C. § 1592(a)(1). Thus, the statute is inapplicable to the facts as Story has alleged them. Also, 18 U.S.C. § 2340, the statute Story cites in support of his intentional infliction of emotional distress claim, is a criminal statute defining severe mental pain or suffering, among other things, with respect to the crime of torture. 18 U.S.C. §§ 2340, 2340A. It is likewise not applicable to the facts as Story has pleaded them. Moreover, no private cause of action exists under either statute. *See Horde v. Elliot*, 2018 WL 987683, at *9 (D. Minn. Jan. 9, 2018) (19 U.S.C. § 1592); *United States v. Greenlight Organic,*

---

[1] Story alleges that for the first few months he worked for Best Way, he arrived 30 minutes early to his shift daily without additional pay. Compl. 2-3. But he also alleges he arrived early of his own volition, *id.* 3, and only ceased arriving early when Best Way told him to stop, *id.* 9. Moreover, to the extent he alleges he made a complaint, he alleges he complained of racial discrimination rather than for a lack of overtime pay. *Id.*

*Inc.*, 264 F. Supp. 3d 1376, 1380 (Ct. Int'l Trade 2017) (19 U.S.C. § 1592); *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007) (criminal statutes). The Court should dismiss Story's claims under these statutes.

In his response, Story appears to invoke common law negligence and intentional infliction of emotional distress. Resp. 6-7 (enumerating common-law elements for both torts). But even if the Court were to construe the Complaint as bringing claims for common law negligence and intentional infliction of emotional distress, the Court should nonetheless dismiss those claims. Story's allegations regarding the incident in which his steering bar dislodged from his truck are insufficient to raise his right to relief for negligence and intentional infliction of emotional distress beyond the speculative level. And the Court finds that no other allegations in the Complaint can be construed as attempting to state a claim for these torts.

### IV. Story fails to state a claim for Title VII discrimination, but Story states a claim for retaliation.

In his response to Defendants' Motion, Story clarifies that he should have brought his claims for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). Resp. 6. "Title VII prohibits discrimination 'because of' a protected characteristic, including race." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (citing 42 U.S.C. § 2000e-2(a)(1)). To state a claim for relief under Title VII, a plaintiff must allege enough facts to plausibly suggest that his employer discriminated against him because of

9

his race. *Gallentine v. Hous. Auth. of Port Arthur*, 919 F. Supp. 2d 787, 804 (E.D. Tex. 2013). Here, Story alleges: (1) that he was subject to derogatory comments by his supervisor, (2) that others in the workplace acknowledged that same supervisor was racist, (3) that the same supervisor wore an offensive garment to work to offend Story, (4) that a different supervisor gave Story a warning for coming to work without his glasses, (5) that in October 2016 Defendants started holding Story to more stringent rules than he had been subject to before, and (6) that Defendants Brett and Sonja Witt required him to watch a "racially sensitive video." But he never alleges that he was fired because of his race or that any other similarly-situated employee not in his protected class was treated more favorably than he was treated. *See Chhim v. Univ. of Hous. Clear Lake*, 129 F. Supp. 3d 507, 514 (S.D. Tex. 2015) (dismissing Title VII discrimination claim because plaintiff did not allege others outside protected class were treated differently).

While Story does allege that Randy, his nightshift supervisor used a racial slur to describe Story and vowed to "get rid of hi[m]," Compl. 8, racial slurs are not necessarily "sufficient to establish an inference of discrimination," *McKinney v. Tex. Dep't of Transp.*, 167 F. Supp. 2d 922, 931 (N.D. Tex. 2001). Indeed, "a principal focus in the analysis of derogatory remarks continues to be the identity of the speaker," and "the Fifth Circuit continues to assess whether the remarks were made by someone 'principally responsible' for the employee's termination." *Id.* (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)). Story does not allege that Randy, who allegedly used the slur, terminated him. To

the contrary, the Complaint implies that Defendant Sonja Witt terminated Story. *See* Compl. 13-14 (describing that on the day he was terminated "Sonja Witt was calling other employees who [Story] does not work with, asking them about [his] attitude," that Tommy was also "called to the trailer" for the same purpose, and that Story was "called to the trailer" and terminated). Thus, Story's allegations fall short of pleading a plausible claim for racial discrimination under Title VII. Such a claim should be dismissed without prejudice.

To establish a retaliation claim under Title VII, a plaintiff must show: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015). Protected activity under Title VII is "opposition to any practice rendered unlawful by Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). A person who makes an internal complaint regarding perceived racial discrimination has engaged in a protected activity for purposes of alleging a retaliation claim. *See Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (per curiam) ("An employee that files an internal complaint of discrimination engages in a protected activity." (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001))); *see also Walker v. Univ. of Tex. Med. Branch – Galveston*, 2018 WL 3850827, at *4 (S.D. Tex. July 3, 2018) (noting that courts in this circuit "uniformly hold that an informal complaint must reference a discriminatory practice to constitute a

11

protected activity" (citations omitted)), *adopted by* 2018 WL 3844691 (S.D. Tex. Aug. 13, 2018). With respect to the third element, "[e]vidence for a causal connection includes: temporal proximity between a protected act and adverse employment action; an employment record that does not support the adverse action; and an employer's departure from typical policies and procedures." *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 653 (N.D. Tex. 2019) (citing *Blasingame v. Eli Lilly & Co.*, 2013 WL 5707324, at *15 (S.D. Tex. Oct. 18, 2013)).

Story has stated a claim for retaliation under Title VII, and such a claim should survive dismissal. First, Story alleges that he made an internal complaint to Yogi regarding Randy's racial remarks. Compl. 9. This allegation adequately pleads that Story engaged in a protected activity. Further, Story alleges he was terminated. Thus, he suffered an adverse employment action. Finally, the alleged facts sufficiently support a causal connection between Story's protected activity and his termination. Story alleges that he complained to Yogi about Randy's racial remarks on October 13, 2016. *Id.* He alleges that he was terminated the next week—on October 21, 2016. *Id.* 13-14. Such a close temporal proximity could give rise to an inference that Story's termination may have been motivated by his complaint to Yogi. *See Garvin*, 391 F. Supp. 3d at 653 (suggesting that "when the acts are separated by weeks," temporal proximity alone may suffice as evidence of retaliation); *Kelley v. KIMC Invs., Inc.*, 2012 WL 639283, at *6 (N.D. Tex. Feb. 28, 2012) ("Plaintiff has set forth sufficient facts that he opposed practices that allegedly were discriminatory and unlawful; that he was terminated; and that

12

temporal proximity existed between the allegedly protected activity and his termination, which is sufficient to raise the issue of a causal connection at the pleadings stage."). The Court concludes these allegations are sufficient to satisfy the Rule 12(b)(6) standard.

Defendants argue that because Story alleges he was terminated for "insubordination and a few other things," he "essentially admits" that he is not entitled to relief under Title VII. Mot. 6. However, the determination of whether an employer's articulated reason for a termination is a pretext for retaliation is best addressed in another procedural context. *See Feist v. La. Dep't of Just., Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (noting that when an employer asserts a legitimate, non-retaliatory reason for an employment action, the employee can adduce evidence demonstrating that the stated reason is actually a pretext for retaliation). Story's retaliation claim under Title VII should survive dismissal.

### V. Story should be granted leave to amend his pleadings.

After being served with a Rule 12(b) motion, a party may amend its pleading with the other party's written consent or with leave of court. Fed. R. Civ. P. 15(a)(2). Leave to amend should be freely given, and it is an abuse of discretion to deny leave to amend without justification. *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004). Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court

13

that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

In his response to Defendants' Motion, Story asks that if the Court "determine[s] that one or more of the challenged claims fails to state a claim or are otherwise barred, then [he] should be permitted to amend[.]" Resp. 9. Accordingly, the Court should grant Story leave to amend his Title VII claims.

## Recommendation

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 23) should be GRANTED in part and DENIED in part. The Court should dismiss with prejudice Story's civil rights claim under 42 U.S.C. § 1983, his negligence claim under 19 U.S.C. § 1592, and his intentional infliction of emotional distress claim under 18 U.S.C. § 2340. The Court should grant Story leave to amend his FLSA wrongful termination claim and his race discrimination and retaliation claims under Title VII.

**SIGNED** August 4, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).